IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2000

## RAY CHARLES GASAWAY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-A-128     Steve R. Dozier, Judge**

--------

**No. M2000-00991-CCA-R3-PC - Filed March 29, 2001**

--------

Petitioner, Ray Charles Gasaway, filed a Petition for Post-Conviction Relief in the Davidson County Criminal Court, which the post-conviction court subsequently denied. Petitioner challenges the denial of his petition, raising the following issue: whether the trial court erred in ruling that the Petitioner was provided effective assistance of counsel. Specifically, Petitioner argues that his trial counsel failed to investigate, failed to raise the fatal variance between the indictment and the proof at trial and failed to raise as an issue the violation of Petitioner's right to due process because of the delay between the commission of the crimes and commencement of adversarial proceedings. After a thorough review of the record, we affirm the trial court's denial of the Petitioner's post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Ray Charles Gasaway.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  BACKGROUND

The Petitioner, Ray Charles Gasaway, appeals as of right from the Davidson County Criminal Court's denial of post-conviction relief. Petitioner was convicted of two counts of sexual battery and three counts of rape. Following a sentencing hearing, Petitioner was sentenced to two years incarceration on each of the sexual battery convictions and twelve years on each of the rape convictions. All sentences were ordered to run concurrently. On appeal, this Court reduced

Petitioner's sexual battery sentences to eighteen months each, but affirmed the judgment of the trial court in all other respects. State v. Ray Charles Gasaway, No. 01C01-9703-CR-00101, 1998 WL 131536, at * 1, Davidson County (Tenn. Crim. App., Nashville, Mar. 24, 1998), perm. to appeal denied (Tenn. 1998). In the direct appeal of Petitioner's convictions, this Court summarized the facts as follows:

> The victim in this case, RB, [FN1] was the defendant's step-son at the time the offenses occurred in approximately 1991 and 1993. RB, sixteen at the time of trial, testified that, when he was "about eleven," the defendant had fondled his genitals. The first time it occurred was in the bedroom of the apartment in which RB, the defendant, RB's mother and younger brother were living. RB testified that the defendant had put his hands under RB's clothes and fondled him for thirty to forty-five minutes. The next time it happened was after RB had finished taking a shower. RB testified that the defendant had walked into the bathroom while RB was naked and told him to sit down. The defendant then began fondling him again, and RB testified that the defendant's hands and mouth touched RB's penis.

> [FN1] It is the policy of this Court to identify minor victims of sex crimes by their initials.

> RB also testified that, when he was thirteen, the defendant "had anal sex with" him. When asked to explain this, RB testified that the defendant had touched the inside of RB's "butt" with his penis. RB testified that it had felt "[p]ainful." RB testified about three specific instances in which the defendant had touched the inside of RB's "butt" with his penis, all while he was thirteen years old. [FN2]

> [FN2] RB testified that the defendant had also engaged in oral sex with him on two of these occasions. However, in making its election of offenses, the State chose to proceed on the allegations of anal sex.

> The defendant testified and denied ever having touched RB in a sexual manner.

Id.

On September 30, 1999, Petitioner filed a Petition for Post Conviction Relief. Upon review of Petitioner's petition, the post-conviction court appointed counsel to represent Petitioner. On November 8, 1999, Petitioner filed an amended petition for relief, and a second amended petition was filed on February 9, 2000. The post-conviction court held a hearing on the petition on February 18, 2000, at which Petitioner and his trial counsel testified. The post-conviction court took the petition and hearing under advisement, and subsequently entered an order denying the Petition for Post Conviction Relief, on April 17, 2000. The Petitioner filed an appeal as of right to this Court.

## II. POST-CONVICTION HEARING

At the post-conviction hearing, Petitioner's trial counsel testified that he was appointed to represent Petitioner on July 12, 1995, the day Petitioner was arraigned. At the time of this appointment, counsel had only been practicing three or four months and Petitioner's trial was counsel's first jury trial. Counsel testified that he was able to persuade the court to reduce Petitioner's bond to $10,000, which made it feasible for Petitioner's employer to post his bond. On August 7, 1995, Petitioner was released on bond. Petitioner immediately returned to his job in Dalton, Georgia as an over-the-road truck driver. Counsel stated that because Petitioner was always on the road and difficult to contact, counsel's only means of contacting Petitioner was through Petitioner's employer. Also, counsel stated that often Petitioner would call him and leave messages, but by the time he returned Petitioner's call, Petitioner would no longer be at that location or number. As a result, counsel did not have any communications with Petitioner from August 7, 1995 to January of 1996.

At some point, Petitioner's employer decided to no longer stand as surety. In January of 1996, Petitioner was taken into custody and returned to jail in Nashville. Counsel testified that Petitioner wanted to pursue an alibi defense and gave counsel the names of potential references or witness who lived in Ohio. Counsel explained that Petitioner insisted that, at the time the incidents allegedly occurred, Petitioner was in Cambridge, Ohio. Counsel said that Petitioner told him that Petitioner was in Ohio from approximately March or April of 1993 until the end of 1993. However, counsel testified that he was unable to verify all of Petitioner's references and names, therefore counsel did not believe an alibi defense would be credible and decided against such a defense.

Counsel further testified that he did not think a motion asserting Petitioner's "right to a speedy trial" would be credible, given that the initial delay was mainly due to the authorities' inability to locate the Petitioner. Counsel acknowledged that he had viewed, through discovery, the victim's disclosure interview with the Department of Human Services, which occurred in 1994. Trial counsel also acknowledged that he was aware of the variance in the indictment and the proof. Counsel was aware that in the State's response to Petitioner's motion for a bill of particulars, the state had said that the events occurred on Nix Avenue, while the victim testified at trial that two of the incidents occurred on Jones Avenue. However, counsel stated that he was not surprised by any of the testimony at trial from the victim, and that none of the variations in the dates or the places hindered his ability to prepare for Petitioner's trial. Counsel indicated that he had participated in discussions about the case with the prosecutor, in addition to receiving the bill of particulars. Also, counsel testified that he raised many of these issues in the motion for new trial and in Petitioner's appeal, including an issue concerning the victim's behavioral problem (attention deficit hyperactivity).

The Petitioner testified that while he was on bond and continuing to work as a cross-country truck driver, he attempted to reach his trial counsel on several occasions, but was unsuccessful. Petitioner claimed that counsel never returned any of his messages and that counsel could have easily contacted Petitioner through the dispatchers at Petitioner's job. However, Petitioner stated that when

3

his bond was revoked and he was returned to jail in Nashville, he met with counsel eight to ten times between January 20,1996 and the start of his trial on March 17, 1996. Petitioner testified that he wanted to go to trial because he was not guilty of the charges. Petitioner said that counsel told him that an alibi defense was not needed and that, since the State was offering Petitioner such a low plea, the State obviously had no case against Petitioner.

On cross-examination, Petitioner admitted that, during the time he was on bond, he did not attempt to go to Ohio and convince any of his potential witnesses or family members to testify on his behalf. Petitioner also admitted that, during this time, he did not come to Nashville to talk with counsel about his case.

Following the post-conviction hearing, the trial court took the case under advisement and subsequently filed a detailed findings of fact and conclusions of law in its order denying relief to the Petitioner. In its findings, the trial court found that Petitioner had failed to meet his burden of proof as to all of his allegations. Regarding the issue of a speedy trial, the trial court found that trial counsel elected against filing this motion, since the Petitioner was responsible for most of the delay. The trial court further found that the actual thirteen month delay between the indictment and Petitioner's trial "did not rise to the level of a speedy trial violation, especially where the petitioner is responsible for the delay."

As to Petitioner's allegation that the delay hindered his ability to formulate a potential alibi defense, the post-conviction court found that this allegation was not supported by the proof at the hearing. The trial court accredited counsel's testimony and counsel's tactical decision not to pursue an alibi defense, given counsel's inability "to verify any of the petitioner's references and/or witnesses."

Further, the trial court rejected Petitioner's allegation that counsel's failure to raise the material variance between the indictment and the proof at trial, was ineffective assistance of counsel. Petitioner argued that counts one and two of the indictment alleged that "on a day in 1993 the petitioner engaged in unlawful sexual contact with the victim." However, at trial, the victim testified that some incidents happened at an address on Jones Circle, when the victim was eleven years old. Petitioner argued in the post-conviction court that if the victim was age eleven, then that would make the year of the incidents either 1990 or 1991, given that the victim was born in 1979. Petitioner asserted that such a variance was material, because it deprived him of the ability to adequately prepare and present an alibi defense. The trial court found that Petitioner's arguments were without merit, because counsel testified that he was not surprised by the victim's testimony, as counsel had previously reviewed the discovery materials submitted by the State.

The post-conviction court concluded that Petitioner was not prejudiced by counsel's decision against raising the variance issue. Further, the court found that Petitioner had failed to provide the court with any substantial proof or testimony reflecting counsel's deficiencies at trial. Therefore, the trial court denied the Petition for Post-Conviction Relief.

4

## III. ANALYSIS

### A. Standard of Review

The findings of fact from a post-conviction hearing are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. Henley, 960 S.W.2d at 578-79; Massey v. State, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996). Questions concerning the credibility of witnesses and the weight and value to be given their testimony are resolved by the trial court, not this court. Burns, 6 S.W.3d at 461. The burden of establishing that the evidence preponderates otherwise is on the petitioner. Henley, 960 S.W.2d at 579.

The above standards are modified when the claim for relief is ineffective assistance of counsel. In State v. Burns our supreme court held that a claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact, and thus is subject to a de novo review. Burns, 6 S.W.3d at 461; see Fields v. State, ___ S.W.3d ___ (Tenn. 2001), No. E1999-00915-SC-R11-PC, 2001 WL 166380, at *3 (Feb. 20, 2001). The de novo review of a trial court's factual findings by an appellate court are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact. Fields, 2001 WL 166380, at *3; see also Henley, 960 S.W.2d at 579. Furthermore, in reviewing the trial court's application of law to its factual findings "to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts should conduct a purely de novo review, according to the trial court's conclusions of law no deference or presumption of correctness." Fields, 2001 WL 166380, at *5. A defendant alleging ineffective assistance of counsel must prove the allegations of fact underlying his claim by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Fields, 2001 WL 166380, at *5. This standard of proof is required regardless of whether a petitioner is bringing the claim in a direct appeal or a post-conviction petition. See Burns, 6 S.W.3d at 461 n.5.

On appeal, this court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. 2052. Simply put, the error must be of a degree that deprives the defendant of a fair trial and calls into question the reliability of the outcome. Burns, 6 S.W.3d at 463.

Further, this court must determine whether the services rendered by the petitioner's trial counsel were within the range of competence demanded of attorneys in criminal cases. 523 S.W.2d at 936. Also, when reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

**B. Failure to Investigate**

In his first issue, Petitioner argues that his trial counsel's performance was deficient and prejudiced Petitioner's ability to raise valid defenses to the charges against him, because counsel failed to adequately investigate Petitioner's case. Specifically, Petitioner asserts that counsel failed to investigate the circumstances behind the victim's treatment for attention-deficit-hyperactivity and behavioral problems. Also, Petitioner contends that counsel failed to thoroughly investigate possible witnesses and references, which would give Petitioner an alibi defense. We disagree.

> In Strickland v. Washington, the Supreme Court stated that
>
> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 691, 104 S. Ct. 2052; see also Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974); DeCoster, 487 F.2d at 1203-04; Baxter, 523 S.W.2d at 933. The failure of trial counsel to conduct a reasonable investigation constitutes deficient performance. See Austin v. Bell, 126 F.3d 843, 848 (6th Cir. 1997).

Here, Petitioner argues that counsel did not investigate or attempt to obtain records concerning the victim's behavioral problems. Petitioner claims that had counsel thoroughly investigated, counsel would have been able to challenge the credibility of the victim, and the outcome of his case would have been different. However, the post-conviction court found that, while counsel admitted his failure to obtain the records prior to trial, counsel did raise this issue of new evidence in his motion for new trial, which was denied. The trial court concluded that the Petitioner had not provided any testimony or evidence to show that counsel's performance was deficient.

The trial court also found that Petitioner's counsel made attempts to investigate this case, in order to pursue an alibi defense for Petitioner. Counsel contacted Petitioner's brother and sister in Ohio, Petitioner's friend, Allen Decker, and Southeastern Plastics, who had employed Petitioner for five days. However, none of these people decided to testify on Petitioner's behalf. Counsel also tried to contact other references and witnesses, but was unable to verify any of the information

6

Petitioner had given him. As a result, counsel decided that he would not pursue an alibi defense. The trial court found that counsel's decision not to further pursue an alibi defense was a reasonable strategy. We have held that "the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper, 847 S.W.2d at 528. Deference must be given to an informed trial strategy and this Court must refrain from second-guessing trial counsel's decision not to pursue an alibi defense. See, Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

## C. Fatal Variance in the Indictment

In his second issue, Petitioner argues that evidence of the date and location of the offenses presented at trial differed from the date alleged by the state in the indictment to such a degree as to present a fatal variance between the indictment and the proof presented at trial. The trial court found that any variance between the indictment and the proof was not fatal or material, and there is no evidence in the record that would preponderate against this finding.

A variance between the indictment and the proof is fatal if: (1) the defendant is insufficiently informed of the charges against him, such that he is unable to prepare adequately for trial; and (2) the defendant is not protected against a subsequent prosecution for the same offense. State v. Gieck, 29 S.W.3d 57, 60 (Tenn. 1999) (citing State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984)). Tennessee Code Annotated section 40-13-207 provides, "[t]he time at which an offense was committed need not be stated in the indictment . . . unless the time is a material ingredient of the offense." It is necessary that the evidence prove that the offense occurred prior to the return of the indictment. State v. Anderson, 748 S.W.2d 201, 203 (Tenn. Crim. App. 1985). A variance between the indictment and the proof at trial will not be held fatal unless it is both material and prejudicial. State v. Holloman, 835 S.W.2d 42, 45 (Tenn. Crim. App. 1992). "A material variance will not be found where the allegations and proof substantially correspond." Id.

In the present case, the indictments alleged that the offenses occurred "on a day in 1993." In response to Petitioner's motion for a bill of particulars, the State responded that the offenses occurred in the "early spring or summer of 1993." Defendant claims that because the victim testified that two of the incidents occurred on Jones Circle, when the victim was eleven years old, but the State elected a day in 1993 as the date of the offenses, he was severely prejudiced and deprived of the opportunity to present an alibi defense. We want to clarify that, in this case, Petitioner does not allege that proof presented at trial, of criminal acts committed in 1991 or 1992, violated the provisions of State v. Rickman, 876 S.W.2d 824 (Tenn. 1994) and Tenn. R. Evid. 404 (proof of sex crimes occurring outside the time frame alleged in the indictment are admissible only in compliance with Tenn. R. Evid. 404(b) procedures). Petitioner has limited his argument to the specific assertion that the indictment alleged sexual misconduct in 1993, but the proof at trial was that the conduct occurred in 1991 or 1992. Therefore, we do not address any claim of ineffective assistance of counsel regarding a failure to object to the testimony based upon Rickman.

7

The Petitioner's counsel testified that he was aware of the specificity required for indictments, however he declined to raise the issue because he was fully aware of the charges and circumstances surrounding Petitioner's case. Counsel stated that he had the State's response to discovery, as well as copies of notes made by a Department of Human Services investigator. Counsel further acknowledged that he was not surprised by the victim's testimony at trial. We have held that there can be no reversible error, when a defendant is sufficiently aware of the charges being levied against him and is able to adequately prepare for trial. See State v. Moss, 662 S.W.2d at 592. The post-conviction court found that counsel sufficiently considered the variance issue and the alibi defense, but made a competent decision not to raise either issue. We find nothing in this record, which would preponderate against the findings of the trial court.

## D. Failure to Raise Due Process Issue Regarding Delay in Commencement of Adversarial Proceedings

Petitioner's final issue asserts that his trial counsel "failed to raise a 'speedy trial' or due process issue resulting from the delay in the commencement of the adversarial proceedings." While the issue is framed in terms of a "speedy trial" issue, i.e., a violation of the Sixth Amendment right to a speedy trial, the argument made by Petitioner in his brief is limited to the failure of his trial counsel to raise a due process issue regarding delay between commission of the offenses and the commencement of adversarial proceedings. As stated by our supreme court in State v. Gray, 917 S.W.2d 668 (Tenn. 1996):

> The law is well-settled that "[d]elay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial." State v. Dykes, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990). (further citations omitted).
>
> However, as the Dykes court further recognized, the " 'delay may occur in such a manner that the defendant's Fifth Amendment right to due process - in contrast to the Sixth Amendment right to speedy trial - is violated.' " Gray, 917 S.W.2d at 671.

The supreme court in Gray further held,

> Today we articulate a standard by which to evaluate pre-accusatorial delay and hold that an untimely prosecution may be subject to dismissal upon Fifth and Fourteenth Amendment due process grounds and under Article I, §§ 8 and 9 of the Tennessee Constitution even though in the interim, the defendant was neither formally accused, restrained, nor incarcerated for the offense. In determining whether pre-accusatorial delay violates due process, the trial court must

consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused.

Gray, 917 S.W.2d at 673.

In the case sub judice, the trial counsel stated that he did not file a motion regarding delay in commencement of proceedings, even though it was termed as a motion regarding a "speedy trial," because the delay seemed to be not credible due to the fact that it was basically occasioned by Petitioner's fugitive status. Furthermore, Petitioner failed to show how he was prejudiced by a delay which was, at most, approximately four years. The earliest incident of criminal activity, according to the proof, was in 1990 or 1991, and Petitioner was indicted in February, 1995. As Petitioner was unable to show he was prejudiced by the delay, he therefore failed to prove any prejudice by his trial counsel's decision to not raise the issue.

## IV. CONCLUSION

Based upon the findings of the post-conviction court, we find that the Petitioner has failed to prove either prong of the Strickland test. The trial court did not find, and neither did Petitioner show, that his trial counsel was deficient to such a degree that Petitioner was prejudiced and deprived of a fair trial. Therefore, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE