# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 5, 2003 Session

## STATE OF TENNESSEE v. CARL WATSON

### Direct Appeal from the Criminal Court for Shelby County
### No. 99-00179      Chris Craft, Judge

---

### No. W2002-01679-CCA-R3-CD - Filed September 30, 2003

---

A jury convicted the Defendant, Carl Watson, of rape, and the trial court imposed a ten-year sentence. On appeal, the Defendant contends: (1) the evidence was insufficient to support his conviction; (2) the State's bill of particulars was inadequate; (3) the trial court erred in failing to grant him a continuance or a mistrial due to the State's failure to comply with discovery; (4) the trial court erred in excluding evidence of the victim's alleged gang affiliation and initiation as a possible source of her hymenal tear; and (5) the trial court erred in not recusing itself following an ex parte communication with jurors after trial. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Joseph S. Ozment, Memphis, Tennessee, for the appellant, Carl Watson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones and Amy P. Weirich, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The victim, S.W.,[1] testified she awoke from a nap to find she was partially unclothed, and that the Defendant, her mother's live-in boyfriend, was on top of her having sex. She stated his penis was in her vagina and "clear stuff" came out. According to the victim, she told the defendant "to get up off of [her]." She testified the Defendant said he was putting covers over her and told her not to tell her mother. She indicated he was not wearing the back brace that he often wore.

---

[1] The proof indicated the offense was committed when the victim was fourteen years old. Therefore, in keeping with this court's policy of referring to juvenile victims of sex crimes by their initials, we refer to this victim by her initials even though she was an adult at the time of trial.

The victim stated the offense occurred on Friday, August 26, 1998.[2] She said she reported it to her mother on Saturday night during an argument with the Defendant. She testified the Defendant threw a fan at her and then struck her face with his hand after her mother confronted him regarding the allegations. The victim said the offense was reported to the police on Sunday. The victim also testified that later that day, the Defendant apologized for "touching on" her.

The victim's mother, Cozette Wells, recounted that the Defendant and victim argued on a Saturday night, and in the course of the argument, the victim said the Defendant had been "touching" her. Ms. Wells testified that after she questioned the Defendant regarding the victim's allegations, the Defendant "smacked" the victim and hit her in the face with a fan. Ms. Wells testified she called the police, and they arrested the Defendant on Sunday. She stated the victim told her the rape occurred on Monday, August 24th, and that she gave this information to the police. Ms. Wells indicated the victim was mentally retarded and was in a "resource" class at school. She also stated the Defendant's back brace did not hinder him from having sex or engaging in other physical activities.

Police Officer Delbert Polk testified that on August 30, 1998, he went to the family's home in response to a reported assault. Officer Polk said the Defendant indicated he could not have raped the victim because he was wearing a back brace. Officer Polk also said the Defendant described the victim as "slow" and said she was "lying."

Nurse Sandra Anderson testified she examined the victim at the Memphis Sexual Assault Center and noticed a tear in the victim's hymen. She was unable to conclude that the tear necessarily resulted from sexual activity.

At trial, the Defendant denied having sex with the victim. According to the Defendant, at the time of the offense, he wore a back brace due to fractured pelvic bones and his injuries prevented him from engaging in sexual intercourse. He stated the victim accused him of "touching on" her after he slapped her for striking her brother. He denied throwing a fan at the victim; he said he held a fan up in self-defense because the victim had a knife. He testified the police were called the following day, and he was arrested. He said he told the police he was not alone with the victim on Monday, August 24th, the date initially identified by the victim as the date of the offense.

The Defendant's sister testified Cozette Wells said she thought the victim lied about her accusations. The Defendant's mother testified Ms. Wells and the victim had a reputation for untruthfulness.

The jury convicted the Defendant of rape. Although the Defendant was also charged with rape of a child and aggravated sexual battery stemming from an alleged separate incident, the jury acquitted the Defendant of those charges.

---

[2]August 26, 1998, fell on a Wednesday.

## I. Sufficiency of the Evidence

The Defendant argues there was insufficient evidence to convict him of rape. Tennessee's rape statute provides rape is the unlawful sexual penetration committed by a person who: (1) uses force or coercion; (2) knows or has reason to know that the victim does not consent; (3) knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or (4) uses fraud. Tenn. Code Ann. § 39-13-503(a). The instant indictment only alleged subpart (1) of the statute, that the Defendant "did unlawfully, intentionally, and forcibly sexually penetrate" the victim. Further, the trial court charged only this subpart of the statute. The Defendant maintains the State failed to prove he used force to commit rape as alleged in the charging instrument.

When an appellant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); see Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Force is statutorily defined as "compulsion by the use of physical power or violence." Tenn. Code Ann. § 39-11-106(a)(12). Further, the statute mandates the term "shall be broadly construed to accomplish the purposes of [the Tennessee Criminal Code]." Id. Relying on State v. Watkins, 754 S.W.2d 95 (Tenn. Crim. App. 1988), the Defendant contends the evidence was insufficient to establish that the Defendant exerted "physical power" over the victim. The Defendant's reliance on Watkins is misplaced. In Watkins, the victim testified the Defendant used no force and she offered no resistance. Id. at 98. The Defendant's reliance upon State v. Wade Henry Allen Marsh, No. E1998-00057-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 365 (Tenn. Crim. App. May 8, 2000), perm. to app. denied (Tenn. 2001), is also misplaced. In Marsh, the victim conceded she offered no resistance to the Defendant's activities. Id. at *8.

In the case at bar, the Defendant, a thirty-nine-year-old adult male, got on top of the fourteen-year-old mentally challenged female. He removed part of her clothing. She resisted by demanding that he get off of her. The Defendant had sexual intercourse with the victim until he ejaculated. In construing the statute to accomplish the intent of our criminal code as required by the statute, see Tenn. Code Ann. § 39-11-106(a)(12), we conclude a rational jury could have found the Defendant used physical power over the victim in order to accomplish sexual penetration. See id. The evidence was sufficient to support the conviction.

## II. Bill of Particulars

The Defendant next contends the State's bill of particulars failed to adequately apprise him of the date of the offense, and, as a result, he should be granted a new trial. We do not agree. The instant indictment alleged the offense was committed between June 1, 1998, and August 17, 1998. The State's bill of particulars stated:

> The Defendant raped the victim at least once at [the family's address] when the Defendant woke the victim up in the back bedroom. No one else was at home. The victim's brother was at his friend's house at Whitehaven. The Defendant told the victim not to tell. The Defendant, when confronted by the victim's mother, told her that he was going to tell the judge that the victim "was touching on [her brother]."

According to the Defendant's testimony, he knew the victim initially told police the offense occurred on Monday, August 24, 1998. At trial, the victim testified the offense occurred on a Friday, but she also indicated the date of the offense was August 26th, which was a Wednesday. The victim's mother testified the victim told her the offense occurred on Monday, August 24th, and that she relayed this information to the police.

When requested by the accused, "the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." Tenn. R. Crim. P. 7(c). The bill of particulars is intended "to provide information about the details of the charge when necessary for a defendant to prepare his or her defense, to avoid judicial surprise at trial, and to enable the defendant to preserve a plea of double jeopardy." State v. Speck, 944 S.W.2d 598, 600 (Tenn. 1997). The State may be required to include in the bill of particulars information such as the nature, time, date, or location of the offense. Id. However, in cases of child sexual abuse, the prosecution may be unable to supply the specific dates for the alleged offense; instead, it may only be able to provide an approximate time for the offense by referring to a memorable occasion in the alleged victim's life. See id. In the event the State is unable to provide an approximate time or date of the alleged offense, a conviction may be affirmed if it does not appear that the State's lack of specificity hampered the defense. Id.

The record indicates that although the victim was fourteen years old at the time of the offense, she was mentally retarded. Further, it is apparent from her testimony that her ability to recollect days, dates, and times was extremely limited. There is no indication in the record that the State was able to supply a more specific description of the time of the offense than it provided in the bill of particulars. Further, the bill of particulars provided to the Defendant described an event which essentially matched the victim's testimony. Given these facts, we cannot conclude the bill of particulars was inadequate.

The gist of the Defendant's argument is that the proof at trial established an offense date that was a few days beyond the dates alleged in the indictment. For a variance to be deemed fatal, it must be material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984); State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

Unless the time of an alleged offense is a material element of the offense, it need not be included in the indictment. Tenn. Code Ann. § 40-13-207. The evidence need only establish the offense occurred prior to the return of the indictment. State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991). It is not reversible error when a defendant is sufficiently aware of the charge and is able to adequately prepare for trial. Moss, 662 S.W.2d at 592. Since the time of the offense is not an element of rape, the variance between the dates alleged in the indictment and the State's proof regarding the date of the offense was not material and, therefore, was not fatal to the Defendant's conviction.

Moreover, the Defendant has failed to establish he was misled or prejudiced by the State's lack of specificity. The bill of particulars described an incident that occurred at the family residence; the Defendant told the victim not to tell anyone; and the victim's mother confronted the Defendant with the accusation. The victim's testimony described only this one incident that occurred at the family residence; the Defendant told her not to tell her mother; she told her mother about the incident; and there was a confrontation between the Defendant and the victim's mother. At trial, the Defendant categorically denied the charges. At no time has the Defendant made a showing that he could have presented any other evidence in his defense had he been provided more information about the specific date of the offense. See State v. Ricky Lamont Brigman, No. M2002-00461-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 538, at **13-16 (Tenn. Crim. App. June 17, 2003) (holding proof that child sexual abuse occurred outside the time frame of the indictment was not a fatal variance), perm. to app. pending. Therefore, this issue is without merit.

### III. Discovery

The Defendant maintains he is entitled to a new trial because the State was grossly negligent in failing to provide him with complete discovery prior to trial. On the day of trial, the State learned that a photograph and a video recording were made during the examination of the victim at the Memphis Sexual Assault Resource Center. Due to a labeling error which occurred at the time of the examination, the photograph and the video recording were not given to the State by the Resource Center. Prior to the start of trial, the State informed the Defendant of the existence of these items. Neither the photograph nor the video recording was introduced at trial.

The trial court denied the Defendant's motion for a continuance after finding the State did not intend to present the items as evidence and after concluding it could not, at that time, determine whether the items were exculpatory. However, the trial court indicated that in the event the Defendant was convicted, he would have the opportunity as part of a motion for new trial to establish whether the photograph and video recording were exculpatory; and, if so, it would consider granting a new trial. Although the Defendant raised the issue again as part of his motion for new trial, the trial court denied the motion after noting the Defendant presented no proof that the items had any exculpatory value.

The Tennessee Rules of Criminal Procedure give defendants the right to inspect and copy tangible objects that are in the possession, custody, or control of the State; and which are material to defense preparation, are intended to be used by the State as evidence in chief at trial, or were obtained from or belong to the Defendant. Tenn. R. Crim. P. 16(a)(1)(C). First, it is questionable

whether the photograph and video recording were in the custody, control, or possession of the State prior to trial. Further, there is no proof in the record that these items were material to the Defendant's trial preparation, and it is absolutely clear they were not offered as evidence or were obtained from the Defendant. Moreover, the Defendant has shown no prejudice and has not shown that these items had any exculpatory value. Accordingly, under these facts, we cannot conclude the State failed to provide the Defendant with discovery as required by the Rules of Criminal Procedure, nor can we determine the trial court erred in refusing to grant the Defendant a continuance or a new trial.

## IV. Evidence of Victim's Alleged Gang Affiliation

The Defendant argues the trial court erred in excluding evidence that the victim belonged to a gang and that one of the ways in which a female may become a gang member is to be "loved in" by having sex with six different male gang members. We hold the trial court properly excluded the evidence.

First, we observe the Defendant did not make an offer of proof concerning the evidence in question. A trial court's ruling excluding evidence may not be challenged on appeal unless the substance of the evidence and its evidentiary basis supporting admission are presented to the trial court by an offer of proof or were apparent from the context. Tenn. R. Evid. 103(a)(2); State v. Robinson, 73 S.W.3d 136, 150 (Tenn. Crim. App. 2001). The offer of proof must demonstrate the substance, purpose, and relevance of the excluded evidence so the trial court may make an informed ruling. Alley v. State, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994). An offer of proof also creates a record from which the appellate court can review the trial court's decision. State v. Goad, 707 S.W.2d 846, 852-53 (Tenn. 1986). If the excluded evidence is not contained in, or apparent from, the record, the appellate court will not consider the issue. State v. Robinson, 971 S.W.2d 30, 40 (Tenn. Crim. App. 1997). Regardless, the record before this court establishes that the evidence the Defendant intended to present was properly excluded.

Rule 412 of the Tennessee Rules of Evidence generally excludes, during a trial for certain sexual offenses, evidence of the sexual behavior of the alleged victim, other than the sexual act at issue. Tenn. R. Evid. 412(a), (c). The rule is commonly referred to as the "rape shield" rule. See State v. Sheline, 955 S.W.2d 42, 43 (Tenn. 1997). The rule recognizes intrusions into the irrelevant sexual conduct of a victim is not only prejudicial and embarrassing, but is also a barrier to the reporting of sexual offenses. Id. at 44-45. The rule, which does allow for exceptions, provides that evidence of the alleged victim's sexual behavior with persons other than the accused may be admitted to prove or explain the source of an injury. Tenn. R. Evid. 412(c)(4)(ii). In the instant case, the Defendant maintains he intended to present the evidence as an alternative explanation for the victim's torn hymen.

However, Rule 412 provides that a defendant who intends to offer evidence of specific instances of sexual behavior by the alleged victim must file a written motion ten days prior to trial. Tenn. R. Evid. 412(d)(1). The record before this court indicates the Defendant filed no such motion until after the trial began and after the trial court had already granted the State's motion to exclude the evidence. The trial court indicated it would be willing to reconsider the matter at a later time

if the Defendant could show the evidence would be admissible. There is nothing in the record indicating the Defendant made further efforts to admit the evidence in question.

The Defendant argues Rule 412 does not apply because he was not attempting to prove a "specific instance of conduct" on the part of the victim. This argument defies logic. The clear import of the proof he wanted to offer was that the victim became a member of a gang by having sexual intercourse with six gang members, specific instances of sexual conduct by the victim.

Further, before the trial court can allow evidence of the victim's alleged conduct to be admitted into evidence, it must determine that the probative value of the evidence outweighs its unfair prejudice. Tenn. R. Evid. 412(d)(4); see also Tenn. R. Evid. 403 (excluding relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice"). The trial court found the Defendant had no foundation for questioning the victim as to whether she was "loved in" to a gang and that his allegations regarding her conduct were "unsubstantiated." The record supports the trial court's findings. The Defendant indicated the proof would consist of testimony that the victim was involved in a gang and testimony from a "gang expert" that one of the ways for a female to become initiated into the gang was to have sex with gang members. Defense counsel candidly advised the trial court, "I don't have knowledge of any specific person that had sex with [the victim]." He indicated it was "possible" the victim was initiated into a gang by having sex with its members, but he did not "know for a fact" that it happened.

We also note that the testimony the Defendant intends to attack is that of the examining nurse who testified about the hymenal tear. However, the nurse stated the hymenal tear could have resulted from things other than sexual activity. Thus, the reason for the gang affiliation testimony is extremely tenuous.

We conclude that due to the speculative nature of the purported evidence, its probative value would be substantially outweighed by the danger of unfair prejudice. Therefore, the evidence would be inadmissible under both Rules 403 and 412(d)(4).

## V. Recusal

The Defendant's final argument is that the trial judge erred by not recusing himself prior to sentencing and the hearing on the Defendant's motion for new trial. During sentencing, the trial judge revealed that after the trial, he approached the jurors to give them certificates of appreciation. According to the trial judge, the jurors volunteered that they acquitted the Defendant of the rape of a child and aggravated sexual battery charges, which stemmed from a separate incident, solely because the jury felt the victim may have been confused about her age at the time of the alleged incident.[3] The Defendant claims the jurors' remarks could have influenced the trial judge's views concerning the appropriate sentence for the Defendant and in denying the motion for new trial; therefore, the Defendant insists the trial judge should have recused himself.

---

[3] The victim's age of less than thirteen years is an essential element of rape of a child, Tenn. Code Ann. § 39-13-522(a), and aggravated sexual battery, Tenn. Code Ann. § 39-13-504(a)(4).

A trial judge should recuse himself or herself whenever the judge has any doubt as to his or her ability to preside impartially or whenever his or her impartiality can reasonably be questioned. State v. Pannell, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001). This is an objective standard. Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. The trial judge retains discretion over his or her recusal. State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995). Unless the evidence in the record indicates that the failure to recuse was an abuse of discretion, this court will not interfere with that decision. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

It is generally improper for the trial court to communicate with the jury outside the presence of the parties. State v. Tune, 872 S.W.2d 922, 928 (Tenn. Crim. App. 1993). When an ex parte communication occurs, it should be promptly reported to both parties. See id. In the instant case, it is clear that the trial court did not intentionally seek to communicate with the jury concerning the merits of the case or their verdict. Further, the trial court reported the communication to the parties when, at the start of sentencing, the Defendant questioned the trial court as to how he could have been acquitted of other charges, but convicted of rape. Although we do not conclude the trial court acted improperly, the issue before us is not the propriety of the judicial conduct, but whether the trial court committed an error which resulted in an unjust disposition of the case. See State v. Boggs, 932 S.W.2d 467, 472 (Tenn. Crim. App. 1996).

Initially, we note that the Defendant does not appeal the ten-year sentence imposed by the trial court. In view of this fact, we fail to understand the complaint about the trial judge's presiding over sentencing.

Further, the record shows the trial judge approved the Defendant's conviction as the "thirteenth juror" immediately after the jury returned its verdict, and before the jurors made their ex parte remarks to the trial judge. Further, the trial judge indicated that he heard the same proof as the jury and that the jurors' remarks had "absolutely no impact" on his decisions. Given these facts and circumstances, we cannot conclude the trial judge abused his discretion by refusing to recuse himself.

## VI. Severance

Defense counsel submitted at oral argument that we should find plain error in the trial court's refusal to sever the offenses for trial. As previously stated, the Defendant was also tried for rape of a child and aggravated sexual battery relating to an alleged separate incident; however, he was acquitted of those charges. This issue was not raised in the court below nor in the Defendant's brief. Further, our review of the record reveals that the parties indicated to the trial court prior to the start of trial that all cases had been consolidated by consent. We envision no plain error with the consolidation. See Tenn. R. Crim. P. 52(b) (allowing this court to address certain errors even though they were not properly preserved for appeal). This issue lacks merit.

## VII. Conclusion

We conclude the evidence was sufficient to support the Defendant's conviction; the State's bill of particulars was adequate; the State did not violate Rule 16 of the Tennessee Rules of Criminal Procedure regarding discovery; the trial court did not err in excluding evidence regarding the victim's alleged gang affiliation and initiation; and the trial judge did not err in refusing to recuse himself. Accordingly, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE