IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 11, 2004

## STATE OF TENNESSEE v. JOHN WHATLEY

**Direct Appeal from the Circuit Court for Maury County**
**No. 13006     Stella Hargrove, Judge**

---

**No. M2003-01773-CCA-R3-CD - Filed December 22, 2004**

---

The appellant, John Whatley, was convicted by a jury in the Maury County Circuit Court of aggravated sexual battery. The trial court sentenced the appellant to twelve years in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's actions as thirteenth juror, the specificity of the indictment, the trial court's instructions regarding lesser-included offenses, the trial court's evidentiary rulings, sentencing, and the denial of his motion for new trial. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court; however, in light of Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), we modify the appellant's sentence to eleven years.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed as Modified.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee (on appeal), and L. Samuel Patterson, Columbia, Tennessee (at trial), for the appellant, John Whatley.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; Mark Fulks, Assistant Attorney General; Mike Bottoms, District Attorney General; and Joey Penrod and Christine Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On March 22, 2002, the appellant was indicted for rape of a child. The proof adduced at trial, taken in the light most favorable to the State, revealed that at the end of February or the beginning of March 1996, the appellant lived in a mobile home at 207 Lewis Street in Woodland Trailer Park in Columbia. Several family members also lived in the mobile home, including Lisa Frazier, the

appellant's girlfriend and the victim's mother, and the then three-year-old victim, the child of Frazier and the appellant.[1]  While living at the mobile home, the victim shared a bedroom with his brother, AF. The victim, who was ten years old at the time of trial, testified that he and AF were not allowed out of the room to eat or use the bathroom.  There was no toilet in the bedroom; therefore, the victim and AF urinated and defecated on "[a]nything that we could."  Additionally, the bedroom had a window, but the victim could not see out of the window because it was covered with duct tape.  The victim stated that he did not know the color of the mobile home "because I never seen the outside until I moved out."

During a weekday when it was light outside, the appellant came to the bedroom the victim and AF shared.  The appellant picked up the victim and carried him to the bathroom.  The victim recalled that the bathroom had "kind of like sunflower wallpaper" and "some kind of fur on the toilet."  Once in the bathroom, the appellant locked the door, pulled down his pants, and put his penis in the victim's mouth.  The victim described the appellant's penis as being "very hard and it had hair."  After the offense, the appellant ordered the victim not to tell anyone what had happened.  The victim recalled that the offense occurred "[a]t least a few months" before November 1996 when he was removed from the appellant's custody.

On November 27, 1996, Gloria Kelly, an employee of the Department of Children's Services, visited the appellant's mobile home in Maury County.  She found all residents except the victim and AF in the living room of the home.  She was informed that the two boys were in the bedroom.  Kelly entered the bedroom where she found the victim and AF.  Kelly noticed that the room contained no beds, and it was extremely dark because aluminum foil covered the windows.  The victim and AF were scantily dressed and appeared malnourished and hungry.  Bits of torn diaper were scattered around the room, and the room was "saturated with urine" and had a "strong feces smell."  The four children were removed from the appellant's home.

At the conclusion of the proof, the jury found the appellant not guilty of the charged offense of rape of a child.  However, the appellant was convicted of the lesser-included offense of aggravated sexual battery and was sentenced to twelve years in the Tennessee Department of Correction.  On appeal, the appellant raises the following issues: (1) whether the trial court failed to act as thirteenth juror; (2) whether the indictment failed to state with specificity when the offense was alleged to have occurred; (3) whether the trial court failed to properly instruct the jury on all lesser-included offenses; (4) whether the trial court erred in "[a]llowing the jury to hear about the living conditions in the home in which the allegations were alleged to have occurred, as irrelevant to the charges in this case"; (5) whether the trial court incorrectly applied enhancement factors to the appellant's sentence; and (6) whether the trial court erred in denying the appellant's motion for new trial based upon a conflict of interest with a member of the District Attorney General's office.[2]

---

[1]  It is the policy of this court not to reveal the names of child victims or witnesses in sexually related crimes.

[2]  We will address these issues in a different order than that in which they were raised.

## II.  Analysis

### A.  Indictment

As his first issue, the appellant challenges the indictment charging him with the offense of rape of a child.  Under both the federal and state constitutions, a criminal accused is entitled "to be informed of the nature and cause of the accusation" against him.  See U.S. Const. Amend. VI; see also Tenn. Const. Art. I, § 9.  This requirement is met when an indictment charging an accused "provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy."  State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).

In the instant case, the indictment charged that the appellant "on or about the __ day of February, 1996, in Maury County, Tennessee and before the finding of the indictment, did unlawfully and intentionally, knowingly or recklessly sexually penetrate [the victim], a person less than thirteen (13) years of age, in violation of Tennessee Code Annotated 39-13-522, all of which is against the peace and dignity of the State of Tennessee."  The appellant contends that the

> specificity of that date in the indictment should not require the Appellant to prepare a defense that this even may have instead occurred in January, 1996, nor in March, 1996.  The Appellant prepared to defend himself in this case by providing uncontroverted proof that he never lived in a trailer home with a bathroom decorated with sunflower wallpaper and a fur-covered toilet. . . .  The State placed before the jury and the trial court extensive proof that the trailer home from which the victim was removed by D.H.S. workers in November 1996 was the trailer home in which the alleged event occurred.

Based upon the foregoing argument, it appears that the appellant's true complaints concern the specificity of the indictment and a possible variance between the indictment and the proof.  We will address both of the appellant's complaints.

We note that an "indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."  Tenn. Code Ann. § 40-13-202 (2003).  However, "[t]he time at which the offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding thereof, or generally before the finding of the indictment, unless the time is a material ingredient in the offense."  Tenn. Code Ann. § 40-13-207 (2003); see also State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991).  We conclude that the indictment charging the appellant is sufficiently specific to alert the appellant of the need to defend against the charge of rape of a child and to prevent further charges which

would violate double jeopardy. See Roger Lee Wilson v. State, No. E2003-01378-CCA-R3-PC, 2004 WL 1533830, at *8 (Tenn. Crim. App. at Knoxville, July 8, 2004), application for perm. to appeal filed, (Sept. 8, 2004).

Moreover, we note that any complaints regarding a variance between the proof and the indictment are likewise without merit. "A variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000); see also State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). A variance is not material when substantial correspondence exists between the proof and the indictment. See Shropshire, 45 S.W.3d 71. The appellant's main complaint appears to be that the State failed to unequivocally prove that the offense occurred in February 1996. However, as we earlier stated, the indictment provides that the offense occurred "on or about the __ day of February, 1996." The proof revealed that the victim was taken from the appellant's home in November 1996. The victim testified that the offense occurred "[a]t least a few months" before he was removed from the appellant's custody, substantially corresponding with the date alleged in the indictment.

Further, in the instant case, there was no question that the victim was under the age of thirteen at the time of the offense. Additionally, the victim asserted only a single sexual act. Moreover, as the appellant contends on appeal, the appellant's entire defense was that he had *never* lived in a mobile home with a bathroom such as that described by the victim. The defense was not that he had not lived in such a mobile home only during February 1996. Notably, it is immaterial whether the offense occurred in February 1996 or as late as November 1996, when all of the possible dates were prior to the filing of the indictment. See State v. Vickers, 985 S.W.2d 1, 9 (Tenn. Crim. App. 1997); see also State v. Andrew Neal Davis, No. M2002-02375-CCA-R3-CD, 2004 WL 1562544, at *18 (Tenn. Crim. App. at Nashville, July 9, 2004), perm. to appeal denied, (Tenn. 2004). Furthermore, this court has long been "sensitive to the fact that young children who are victims of child abuse may not be able to testify that abuse occurred on a specific date, or provide extensive details in this regard." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). Accordingly, there is no indication that the appellant's defense was hampered by a variance in the proof regarding the time frame for the offense. See State v. Michael Thomason, No. W1999-02000-CCA-R3-CD, 2000 WL 298695, at *7 (Tenn. Crim. App. at Jackson, Mar. 7, 2000); see also State v. Philip Charles Saindon, Jr., No. M2001-01860-CCA-R3-CD, 2003 WL 354508, at *7 (Tenn. Crim. App. at Nashville, Feb. 14, 2003).

## B. Admission of Evidence

Next, the appellant contends that the trial court erred in allowing the State to present evidence regarding the conditions in which the victim was living in November 1996. The appellant argues that the testimony was inadmissible under Rule 404(b) of the Tennessee Rules of Evidence because "the evidence should have been excluded as it was much more prejudicial than probative."

Tenn. R. Evid. 404 provides:

(b) Other Crimes, Wrongs, or Acts. - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

See also State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

Generally, "[o]nly in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident." State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992). In making its decision regarding the admissibility of the testimony, the trial court must first determine if the offered testimony is relevant to prove something other than the appellant's character. If the evidence is relevant, then, upon request, the court will proceed to a Rule 404(b) hearing.

The day before trial, the trial court held a hearing on a motion in limine filed by the appellant, asking that the trial court prohibit evidence regarding the living conditions of the appellant's home while the victim lived with him, such as the presence of human waste in the victim's bedroom. The trial court, acting out of an abundance of caution, instructed the State not to reveal the conditions of the home unless the conditions became relevant during the course of trial. At trial, the conditions of the home were not revealed during the State's initial direct examination of the victim. On cross-examination, the appellant elicited testimony that the victim had lived in more than one mobile home, suggesting that the victim was confused as to the mobile home where the offense occurred.

As a result of the appellant's cross-examination of the victim, challenging the location of the sexual abuse, the State requested the trial court's permission to present evidence regarding the

conditions of the appellant's mobile home at the time the victim lived with him. The trial court, after conducting a jury-out hearing in compliance with Rule 404(b), noted that the appellant raised the issue that the victim had lived in more than one mobile home. Therefore, the trial court found that the probative value of the information outweighed the potential prejudice the information could engender. Thus, the victim was allowed to briefly testify to the conditions of the appellant's mobile home.

Additionally, the State requested the trial court's permission to have Gloria Kelly testify as to the conditions of the appellant's mobile home prior to the removal of the children. The trial court allowed Kelly's testimony to corroborate the victim's testimony because "the defense has opened the door for that, with their cross examination of [the victim]." However, the trial court limited the testimony regarding the conditions of the mobile home, allowing only the conditions of the victim's bedroom to be revealed to the jury. Testimony describing other poor conditions that existed in the home was not allowed.

As we noted earlier, the appellant asserts that the trial court erred in allowing the testimony describing the conditions the victim endured while living with the appellant. Specifically, the appellant complains about testimony from the victim and Kelly concerning the presence of urine and feces, torn diaper bits, and a darkened window in the bedroom the victim shared with his brother. From our review of the record, we question whether the living conditions qualify as a "crime, wrong, or bad act" such as contemplated by Rule 404(b). Regardless, upon the appellant's objection, the trial court determined during jury-out hearings that the appellant opened the door for such testimony by eliciting testimony from the victim that he had lived in more than one mobile home. The trial court pointed out that during cross-examination, the appellant implied that the victim was confused as to the specific mobile home in which the event occurred. The trial court found that it was "appropriate to just let the jury know that [the victim] was removed and taken to an approved state foster home [that would not approve of such conditions]." Therefore, the trial court concluded that the living conditions were highly relevant and probative of the issue of identity and lack of mistake. We agree with the trial court that the appellant's questioning of the victim opened the door to the testimony of which he complains. This issue is without merit.

## C. Thirteenth Juror/Sufficiency of the Evidence

The appellant phrases his next issue as a challenge to the trial court's action as thirteenth juror; however, the bulk of the appellant's argument relates to the sufficiency of the evidence supporting his conviction. We begin our analysis by noting that Tennessee Rule of Criminal Procedure 33(f) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." When a trial court makes a determination following Rule 33(f), the court is acting as thirteenth juror. See State v. Gillon, 15 S.W.3d 492, 500 (Tenn. Crim. App. 1997). This court has observed that once the trial court has approved the verdict as the thirteenth juror, our appellate review is then limited to determining the sufficiency of the evidence. See State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). In the instant case, the trial court, specifically acting as thirteenth juror, found "that the verdict is

overwhelmingly supported by the evidence in this two-day trial." Therefore, we will address the appellant's complaint as a challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In the instant case, the appellant was convicted of aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim" when the "victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2003). "'Sexual contact' includes the intentional touching of the victim's [or] the defendant's . . . intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (2003).

At trial, the victim testified that when he was three years old, the appellant picked him up and carried him to the bathroom. Once in the bathroom, the appellant locked the door, pulled down his pants, and inserted his penis into the victim's mouth. The victim testified that the appellant's penis was "hard" and "had hair on it." The appellant also warned the victim not to tell anyone what happened. It was permissible for the jury to "use their common knowledge and experience in making reasonable inferences from evidence." State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993). As such, the jury could have drawn upon their common knowledge to infer that the appellant forced fellatio for the purpose of sexual arousal or gratification. See State v. Jack Warren Emert, Jr., No. 03C01-9802-CC-00074, 1999 WL 512029, at *2 (Tenn. Crim. App. at Knoxville, July 21, 1999). We conclude that the jury could reasonably have determined from the foregoing evidence that the appellant committed aggravated sexual battery.

### D. Lesser-Included Offense Instructions

Next, the appellant alleges that the trial court erred in not instructing the jury on the lesser-included offense of child abuse. The state contends that the appellant has waived this issue. Tennessee Code Annotated section 40-18-110 (2003) provides:

(a) When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any such offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of such evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

In the instant case, the appellant did not request an instruction on child abuse. In fact, the record reflects that the appellant specifically informed the trial court that he was choosing not to request an instruction on child abuse. Thus, the State contends that based upon Tennessee Code Annotated section 40-18-110(a) and (b), the appellant has waived his complaint on appeal.

Initially, we note that a panel of this court has recently opined that "the waiver provision of Tennessee Code Annotated section 40-18-110 is an unconstitutional abrogation of a criminal defendant's right to have the jury charged on all offenses included within the indicted offense and supported by the proof adduced at trial." State v. Robert Page, No. W2003-01342-CCA-R3-CD, slip op. at 15-16 (Tenn. Crim. App. at Jackson, Aug. 26, 2004), application for perm. to appeal filed, (Oct. 25, 2004). However, we need not address that issue because the appellant was not entitled to the lesser-included offense instruction he seeks in the instant case.

A trial court's decision regarding whether to charge a jury regarding a lesser-included offense is a mixed question of law and fact, which decision this court will review de novo with no presumption of correctness. See State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001). "In applying the

lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). A trial court is not required to charge an offense simply because it is a lesser-included offense of the charged offense. "Whether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge." State v. Burns, 6 S.W.3d 453, 468 (Tenn. 1999). If the instruction is warranted by the evidence, the trial court must instruct the jury on all lesser-included offenses regardless of any theory proposed by either the defense or the State. See State v. Richmond, 90 S.W.3d 648, 660 (Tenn. 2002). In determining whether the lesser-included offense should be charged, "the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence." Burns, 6 S.W.3d at 469.

The current test for determining whether an offense is a lesser-included offense was outlined by our supreme court in Burns, 6 S.W.3d at 466-67. In addition to an enumerated test, the Burns court noted that an offense may be considered lesser-included if so designated by the legislature. Id. at 467 n.12. Tennessee Code Annotated section 39-15-401(d) (2003) specifically designates child abuse as a lesser-included offense "of any kind of . . . sexual offense if the victim is a child." See State v. Elkins, 83 S.W.3d 706, 711 (Tenn. 2002). Accordingly, child abuse is a lesser-included offense of rape of a child.

However, the proof in the instant case did not support an instruction on child abuse. Tennessee Code Annotated section 39-15-1-401(a) (2003) provides that child abuse occurs when "[a]ny person who knowingly other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury." The offense as to a child under eighteen is considered a Class A misdemeanor; however, if the victim is under six years of age, the offense is a Class D felony. Id. Tennessee Code Annotated section 39-11-106(a)(2) defines "bodily injury" as "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty."

There was no proof presented at trial that the victim suffered any injury as a result of the appellant's conduct. Accordingly, even in the light most favorable to the existence of the lesser-included offense, the evidence did not support an instruction on child abuse. Thus, the trial court did not err in failing to charge the jury on the lesser-included offense of child abuse.

E. Sentencing

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2003). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in

his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant was convicted of aggravated sexual battery, a Class B felony. To begin a sentencing determination regarding a Class B felony, a court should begin at the presumptive minimum, then "enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). The presumptive sentence for a Class B felony is the minimum sentence within the appropriate range. See Tenn. Code Ann. § 40-35-210(c). The appellant was sentenced as a standard Range I offender. Accordingly, the presumptive sentence for the appellant's Class B felony conviction was eight years. See Tenn. Code Ann. § 40-35-112(a)(1)-(3) (1997).

The trial court found the existence of two enhancement factors: (5) the victim was particularly vulnerable because of age or physical or mental disability, and (16) the appellant abused a position of private trust. See Tenn. Code Ann. § 40-35-114(5) and (16) (2003). On appeal, the appellant challenges only the trial court's application of enhancement factor (5) regarding the victim's vulnerability.

We note that the particularly vulnerable enhancement factor may be used in child sexual abuse cases because the factor "relates more to the natural physical and mental limitations of the victim than merely to the victim's age." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). In other words, "[t]he factor can be used in an [child sexual abuse] case if the circumstances show that the victim, because of his age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." Id. In the instant case, the trial court found that the three-year-old victim was kept in isolation in the mobile home in which he lived with the appellant and was prevented from summoning help. The facts adduced at trial support this finding.

However, we are compelled to note that the Supreme Court released Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), after the trial in this case. This court has recently recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004), application for perm. to appeal filed, (Sept. 21, 2004).

In Blakely, the Supreme Court held that

the "statutory maximum" for Apprendi[v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

Blakely, __ U.S. at __, 124 S. Ct. at 2537. Essentially, Blakely does not dispute the appropriateness of a trial court's application of enhancement factor (2), which is based on the existence of a defendant's prior criminal history; yet, the constitutionality of the application of the remainder of our statutory enhancement factors without such facts being found by a jury or admitted by an appellant remains to be seen. Thus, as the existence of enhancement factor (5) was not found by a jury, nor was it admitted by the appellant, the application of this enhancement factor is inappropriate under Blakely.[3]

The trial court specifically enhanced the appellant's sentence by two years for each of the two enhancement factors it found applicable, giving the appellant a sentence of twelve years. Accordingly, having found that the application of enhancement factor (5) was error, we are compelled to reduce the appellant's sentence by two years.

However, our analysis of the appellant's sentence is not yet complete. From our review of the appellant's presentence report, we notice that the appellant has a history of numerous misdemeanor convictions. Based upon this documented history of criminal convictions, we conclude that enhancement factor (2), that the appellant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range, is applicable to the appellant. See Tenn. Code Ann. § 40-35-114(2). As such, we conclude that the appellant's sentence should be enhanced by one year. Therefore, the appellant's total effective sentence is eleven years.

## F. Conflict of Interest

As his final issue, the appellant questions whether the trial court erred in "denying the Appellant's 'Motion for New Trial' based on the fact the prosecutor for the State . . . had previously worked for the Office of the Public Defender, who represented the girlfriend of the Appellant in her

---

[3] As we earlier noted, the appellant did not complain regarding the trial court's application of enhancement factor (16). Our review of the record reveals that the appellant testified at trial that the victim was his son, and the victim lived with him at the time of the offense. Therefore, we conclude that even given the dictates of Blakely, the trial court did not err in finding enhancement factor (16) applicable to the appellant.

case, and was present when she was interviewed concerning the case, which was based on the same facts alleged against the Appellant in this case."

Initially, we note that the appellant filed a motion for new trial on May 21, 2003, which motion did not include the conflict issue. A hearing on the motion was conducted, and, on June 17, 2003, the trial court entered a written order denying the motion. Subsequently, on July 16, 2003, the appellant simultaneously filed an amended motion for new trial and a notice of appeal. The amended motion for new trial raised the issue of a conflict. Without ruling on the timeliness of the amended motion, the trial court heard arguments and denied the motion.

Rule 33(b) of the Tennessee Rules of Criminal Procedure provides that a trial court "shall upon motion allow amendments liberally until the day of the hearing of the motion for new trial." Further, "this rule does not prevent a judge from allowing, at his or her discretion, an amendment to a motion for new trial at any time during which the trial judge has jurisdiction of the case." State v. Shawn Rafael Bough, __ S.W.3d __, No. E2002-00717-SC-R11-CD, 2004 WL 2481367, at *6 (Tenn. at Knoxville, Nov. 1, 2004). As we noted earlier, the trial court denied the motion for new trial prior to the appellant filing his amended motion for new trial. Moreover, the appellant filed his notice of appeal on the same day that he filed his amended motion for new trial. The filing of the notice of appeal removed the trial court's jurisdiction over the case, placing jurisdiction with this court. Id. at **6-7. Accordingly, the trial court was without jurisdiction to hear the appellant's amended motion for new trial. Therefore, because the appellant did not raise the issue in his original motion or in an amended motion before the trial court lost its jurisdiction over the case, this issue has been waived. See Tenn. R. App. P. 3(e).

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court, but reduce the appellant's sentence to eleven years.

_____
NORMA McGEE OGLE, JUDGE